IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| RODERICK REESE, § | | |
| TDCJ-CID # 1027930, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. V-05-0068 |
| § | | |
| ANGELA SKINNER, et al., § | | |
| § | | |
| Defendants. § | | |

**MEMORANDUM OPINION AND ORDER**

Roderick Reese, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), has filed motions for injunctive relief along with a civil rights complaint pursuant to 42 U.S.C. § 1983. (Docket Entry Nos. 2 and 8) Reese's claims are supported by pleadings which at times are rambling and conclusory. Although Reese implies that he has been subjected to a multitude of constitutional violations, a careful reading of his pleadings reveals that the focus of his complaint is his belief that he has been subjected to conditions that are detrimental to his medical condition. Specifically, Reese complains that he has been assigned to laundry duty although a shoulder infirmity prevents him from safely engaging in such work. Reese has named numerous defendants (using only last names for almost all of them), many of whom appear to be only tangentially involved in the alleged constitutional violations. Reese's motions for injunctive relief will be denied. Further, Reese will be ordered to submit a more definite statement regarding his allegations which will be discussed below. In doing so, the court will dismiss those claims against defendants which are clearly insupportable pursuant to 28 U.S.C. § 1915.

# I. Allegations and Claims

Reese states that he was diagnosed as having chronic right-shoulder and back pain due to nerve and tendon complications. (Docket Entry No. 1 and 2, at 13)  As a result, he was given medical restrictions which prevented him from engaging in any work involving reaching over his shoulder or repetitive use of his hands.  *Id.*  Despite these restrictions, Assistant Warden Hunter assigned him to work in the laundry room. *Id.*  Without providing any factual detail, Reese claims that the work he was required to perform at the laundry room exacerbated his medical condition. *Id.* at 14.

Reese asserts that the "culprits" were Correctional Officers Franklin, Parnagham, Boleck, and Ryan who, along with Captain Gutierrez, filed a disciplinary case against Reese apparently for refusing to perform his assigned duties.  Further, Warden Brad Casal and Major Monroe condoned the purported mistreatment.  Reese allegedly wrote to the grievance investigator, Ms. Irving, the health officer, Ms. Skinner, the safety compliance officer, Mr. Renfro, and Ms. Bauer of the Classification Department.  All three disregarded the restrictions and approved the placement.  Skinner is also alleged to have shouted at Reese when he continued to complain about his treatment and demanded to see a psychologist. (Docket Entry No. 7, at 2-4)  Reese complains that Skinner's behavior has caused him to experience stress.

Reese also alleges that he has been subjected to mental abuse from four correctional officers working in the laundry area, Parnagham, Bolech, Corn, and Keisser. (Docket Entry No. 1, at 5-7) Parnagham is a female employee who allegedly witnessed Reese strip down.  Reese complains that she made no effort to prevent the alleged abuse and instead laughed at him while subjecting him to a humiliating experience.  Reese describes Bolech as the "most cerebral laundry worker" who

subjects him to psychological abuse and intimidation. Bolech's tactics consist of following Reese to the bathroom and staring at him for hours which Reese labels as "reckless eyeballing." Reese describes Corn as a "court jester of the grandfather persuasion" who often laughs at Reese and subjects him to verbal abuse by asking questions such as "how you doin' [sic] today" after Reese has been subjected to disciplinary action. Reese states that Corn's role in the matter consisted of "cheer-leading," "knee slapping," and "stroking" the egos of his superiors and co-workers. *Id*. at 6. Reese describes Keisser as, "Just another antagonizer [sic] of the laundry who actively participates in harming Reese." *Id*. at 7.

Another laundry officer, Ryan, is implicated because he allegedly forced Reese to sign a safety sheet regarding the job but continued to expect him to work despite his medical restrictions. *Id*. at 6. Ryan's involvement elevated when he disciplined Reese after he suffered an injury which prevented him from doing further work in violation of his restrictions.

Reese refers to an Internal Affairs Officer named Glenn Boldt and accuses him of refusing to investigate the conditions and not allowing Reese to file charges against the alleged perpetrators. *Id.* at 7. Reese claims that he also wrote to DeWitt County Sheriff Joe Zavesky about his problem. Apparently, the sheriff did not intervene. Reese contends that Boldt along with Sheriff Zavesky interfered with his efforts to have the conspirators prosecuted for their misdeeds. Reese further contends that the sheriff is guilty of failing to suppress the crimes that allegedly occurred on the unit.

Reese complains that the Safety Compliance Officer, Sargent Garza, has violated his rights by encouraging him to file grievances and lawsuits yet taking no corrective action. *Id.* at 8. According to Reese, Garza asked to be sent copies of the grievances. However, Garza later failed to rectify any of the problems. He instead remarked, "'Everybody's giving you the runaround and

there's nothing I can do for you.'" Reese contends that Garza is part of the conspiracy against him due to his failure to take action despite his knowledge of the wrongdoings.

Reese names a TDCJ-CID Officer, Sargent Drotke, as a defendant for failing to investigate a disciplinary case. *Id*. He alleges that Drotke stopped his investigation when Reese informed him about his medical restrictions and how he was injured because his restrictions had been violated. Reese concludes that Drotke joined the conspiracy when he learned of the facts and furthered the cause of violating Reese's constitutional rights by assisting in the disciplinary process. *Id*. at 8.

Reese also names the Chief of Classification, Ms. Shirley. *Id.* He claims that while waiting to see Sargent Drotke, he asked Shirley if he could be relieved of his assignment. Ms. Shirley allegedly answered that Reese was appropriately assigned. Without providing any supporting facts, Reese asserts that Shirley was aware of his condition and that her response demonstrates an "unnecessary and wanton infliction of pain" for which Reese suffers. *Id.*

Kelli Ward is also named as a defendant because of her failure to adequately respond to a grievance regarding his work conditions. (Docket Entry No. 7, at 6). Reese accuses Ward of being aware of his debilitating condition but failing to use common sense to correct the problem. Ward responded that the grievance was referred to the Region IV Grievance Office and that the Office found no evidence to sustain his claims of being worked outside of his restrictions. *See* Grievance, (Docket Entry No. 7, at 25-26). Ward noted that a review of Reese's job assignment showed that he was medically unassigned at that time. Reese asserts that Ward's response shows that she is "either oblivious; inept; inebriated or a crook; criminally sophisticated - or complicit with conspiracy to be 'deliberately indifferent' with her fellow defendants [sic]." *Id*. at 6.

Reese states that a TDCJ-CID officer named Lieutenant Saenz retaliated against him by signing a document relating to a disciplinary proceeding brought against Reese. (Docket Entry No. 1, at 9). He claims that Saenz was biased against him because two months prior to the disciplinary proceeding he filed a grievance against Saenz for allegedly threatening to kill him. Reese presumes that Saenz was a part of the conspiracy to work him in violation of his medical restrictions. Reese also names Lieutenant Willis as a co-conspirator for finding Reese guilty of violating a disciplinary rule despite Reese's medical restrictions.

Reese has included a physician, Dr. Burns, as a defendant. *Id.* Reese concedes that Burns prescribed medications for him and later increased the dosages. The doctor also placed restrictions on medically approved work assignments. However, Reese accuses Burns of complicity in the alleged violations by stating that "the officials have tied my hands as far as you're concerned." Reese claims that Dr. Burns was aware of his condition and the pain and harm inflicted by the Stevenson Unit staff. Nonetheless, Burns acquiesced to the actions and failed to unassign Reese despite the risks to his health.

Reese implicates Martha [Martin] Wear who responded, in behalf of the Region IV Director, R. Treon, to one of Reese's many grievances. (Docket Entry No. 1, at 9; Docket Entry No. 7, at 18-19). Reese's grievance consisted of one cryptic statement, "Illegal /unconstitutional transgressions shall not be encouraged and lauded [sic]." (Docket Entry No. 7, at 18). Wear's response was that Reese's prior grievance had been adequately answered and that no further action was necessary. *Id.* at 19.

Reese claims that a fan and some hygiene items have been stolen from him. (Docket Entry No. 7, at 5). He blames the theft for his refusal to go to a medical appointment claiming that the conditions of a transfer unit are unbearable without access to the stolen items.

Reese seeks monetary damages in addition to injunctive relief preventing further abuse. He also seeks a court order entitling him to a pardon or expungement of his records. Reese pledges to drop this suit the day that he is released. (Docket Entry No. 1, at 37-38). He further seeks authorization to file criminal charges on the civil defendants.

## II. Analysis

A prisoner has a right to basic medical treatment and conditions which do not subject him to a substantial risk of suffering unnecessary pain or serious harm. *Estelle v. Gamble*, 97 S.Ct. 285, 290 (1976). Moreover, prison officials may not discriminate against an inmate because of his disability. *See Pennsylvania Dept. of Corrections v. Yeskey*, 118 S.Ct. 1952 (1998); *Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999). However, there is no guarantee that an inmate's ailments will be successfully treated and he is not entitled to the best treatment or conditions available. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Moreover, a prison official does not violate a prisoner's constitutional right to medical care and reasonably safe conditions unless the official is aware of facts that show that the prisoner is in danger of suffering serious harm and the official actually draws an inference that the prison is in danger of being harmed. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998), *citing Farmer v. Brennan*, 114 S.Ct. 1970 (1994). It is not enough to show that the official has been negligent or that he should have known about the danger. *Hall*, 190 F.3d at 697-98; *Mendoza v. Lynaugh*, 989 F.2d

191, 193 (5th Cir. 1993). *See also Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996) (even gross negligence does not establish § 1983 liability). The plaintiff must present facts which demonstrate that the prison official recklessly disregarded a known safety hazard. *Jackson v. Cain*, 864 F.2d 1235, 1246-47 (5th Cir. 1989). *See also McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) ("'subjective recklessness as used in the criminal law' is the appropriate test for deliberate indifference'."), *quoting Farmer*, 114 S.Ct. at 1980.

Reese levels a barrage of complaints at numerous officials who are alleged to be members of a conspiracy bent on injuring him. However, he presents no facts which show that there was an agreement among the defendants to harm him. *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). Reese merely relies on unsupported and conclusory allegations which are insufficient to establish the existence of such a conspiracy. *Id.* at 1024. *See also Priester v. Lowndes County,* 354 F.3d 414, 423 n.9 (5th Cir. 2004).

Many of the defendants identified by Reese are alleged to have resorted to mental abuse. Reese specifically asserts that Officers Parnagham, Bolech, Corn, and Keisser subjected him to verbal taunts, harsh stares, and generally rude behavior. While these actions are not commendable, they do not support a claim for a civil rights violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997), *citing Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir.1993). *See also Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (citations omitted) (guard's use of vulgar language did not violate prisoner's constitutional rights). Reese cannot sue TDCJ-CID officials merely because he feels slighted at their less than genteel behavior. *Id.* The court finds that while some of the above defendants may have engaged in behavior that may have physically harmed Reese, Corn and Keisser are only alleged to have subjected Reese to verbal abuse and other taunts which could not have

7

resulted in any physical injury. Therefore, Corn and Keisser shall dismissed as defendants. *See* 42 U.S.C. § 1997e(e).

Other defendants have been named because they did not handle Reese's grievances in a manner that he found to be satisfactory. Reese complains that Sargent Garza failed to do anything although he previously encouraged Reese to file grievances. According to Reese, Garza merely stated that his hands were tied. Kelli Ward is implicated for having found that there was nothing wrong with Reese's assignment after reviewing the records. Martha Wear, along with R. Treon, are also implicated based on their response made to Reese's cryptic grievance regarding "Illegal /unconstitutional transgressions."

It is well settled that inmates do not have a constitutionally protected right to a grievance procedure. *See, e.g.*, *Jones v. North Carolina Prisoners Labor Union*, 97 S.Ct. 2532, 2544 (1977) (Burger, J., concurring) (applauding the adoption of grievance procedures by prisons, but expressly declining to suggest that such procedures are "constitutionally mandated"); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) ("A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment."). Moreover, there is no showing that Garza, Ward, Wear or Treon were aware of any threat to Reese's safety or that they consciously disregarded any threat. Reese's own allegations indicate that they were not fully informed of the facts. Without such a showing, these defendants cannot be held liable. *See Hare*, 74 F.3d at 650. Therefore, Garza, Ward, Wear, and Treon shall be dismissed as defendants.

Reese appears to have a strong desire to subject the prison officials to criminal prosecution for their purported transgressions. He complains that Officer Boldt and Sheriff Zavesky interfered with his efforts to pursue criminal action against the defendants. A federal civil rights proceeding is not the proper forum to seek such a remedy. *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir.1990). Moreover, There is no constitutional right to have someone criminally prosecuted. *Id.* Therefore, Reese has failed to state a claim against Boldt and Sheriff Zavesky and they shall be dismissed as defendants.

Reese also fails to state a claim regarding his allegations of retaliation. Reese contends that Lieutenant Saenz retaliated against him because he previously filed a grievance against Saenz. The allegations indicate that the grievance was filed two months prior to the disciplinary action taken by Saenz and there is no indication that Saenz was aware of the grievance or had any motive to retaliate against Reese. Without such a showing, Reese's retaliation claim against Saenz must be dismissed. *MacDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Reese's claims against Willis, Saenz's purported co-conspirator are wholly unsupported by any facts that he agreed to a scheme to harm Reese or that he was otherwise motivated to engage in such conduct. Consequently, the claims against Willis are also without any legal basis, and he, along with Saenz shall be dismissed from this action. *Id*. *See also Wilson v. Budney*, 976 F.2d 957 (5th Cir. 1992).

Reese does not clearly identify any culprit regarding the unauthorized taking of his personal property. However, this is of little consequence because his theft allegation fails to establish a claim under 42 U.S.C. § 1983. *See Hudson v. Palmer*, 104 S.Ct. 3194 (1984); *Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). Reese has stated that the articles were stolen from him and for some reason he feels that he cannot go to a medical appointment without them. The alleged harm resulting from

9

the denial of the items is too vague and attenuated to establish a claim of deliberate indifference. *See Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). Reese must seek his remedy in the state courts for the alleged tort of conversion before he can file a complaint in the federal courts. *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). Under Section 501.007 of the Texas Government Code, prisoners may file a grievance with the prison system regarding property that may have been lost or damaged. This is the exclusive remedy available to prisoners. TEX. GOVT. CODE § 501.008. There is no indication that Reese has availed himself of this remedy.

In analyzing Reese's claims, the court has determined that all of them, except those regarding deliberate indifference to Reese's medical needs, are without any legal basis. Moreover, about half of the named defendants should be dismissed. The court is not fully convinced that Reese's deliberate indifference allegations against the remaining defendants have established an actionable claim; however, the court does accept Reese's allegation that he has a serious health problem and will give him an opportunity to provide additional facts by submitting questions in a separate Order for More Definite Statement. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998), *citing Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir.1993).

Reese is not entitled to seek expungement of his records or release in this action. *Wilkinson v. Dotson*, 125 S.Ct. 1242, 1247 (2005). Such remedies must be sought in a habeas corpus action. *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996), *citing*, *Serio v. Members of La. Bd. of Pardons*, 821 F.2d 1112 (5th Cir. 1987).

At this time, the court determines that Reese has failed to carry the burden of persuasion that an injunction is proper or necessary. *Planned Parenthood of Houston and Southeast Tex. v.*

*Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005).  Therefore, the motions for injunctive relief (Docket Entry Nos. 2 and 8) will be denied.

### III. Motions for Bench Warrant, Hearing, and Appointed Counsel

Reese has filed a motion for court appointed counsel (Docket Entry No. 10) and asserts that one is necessary in order to conduct extensive research.  He further contends that the issues are complex and that he needs a skilled lawyer to develop his case.

As stated above, the court has found that part of the claims are frivolous and has ordered Reese to provide basic facts regarding the remaining allegations.  Reese should be familiar with the federal judicial process because he has previously filed civil rights complaints in the United States District Court for the Southern District of Texas.  *See e.g. Reese v. Chaney*, No. H-03-2269 (S.D. Tex. June 15, 2004) (dismissed as frivolous); *Reese v. Cockrell*, No. H-03-0700 (S.D. Tex. Mar. 25, 2003); *Reese v. Chaney*, No. H-03-3862 (S.D. Tex. June 24, 2004).   In general, there is no right to court appointed counsel in civil rights cases.  *Jackson v. Cain*, 864 F.2d 1235, 1242 (5th Cir. 1989).  Appointment of counsel is not warranted in this action due to the elementary nature of its issues and the plaintiff's demonstrated ability to litigate his case.  *Wendell v. Asher*, 162 F.3d 887, 892 (5th Cir. 1998).

Reese has also filed a motion (Docket Entry No. 12) seeking a hearing and a bench warrant.  As explained above, Reese will be given an opportunity to explain his allegations by answering questions contained in the court's Order for More Definite Statement.  The motion will be denied subject to reconsideration after Reese has filed his response.

## IV. Conclusion

The court **ORDERS** the following:

1. The Motions for Preliminary Injunction and Temporary Restraining Order (Docket Entry Nos. 2 and 8) are **DENIED**.

2. The Motions for Appointment of Counsel and for Hearing and Bench Warrant (Docket Entry Nos. 10 and 12) are **DENIED**.

3. All claims regarding retaliation, conspiracy, mental abuse, grievances, criminal prosecution, theft of property, and time credit are **DISMISSED** as frivolous. 28 U.S.C. § 1915(e).

4. All claims against Defendants Garza, Ward, Wear, Treon, Boldt, Zavesky, Willis, and Saenz are **DISMISSED with prejudice**.

5. Garza, Ward, Wear, Treon, Boldt, Zavesky, Willis, and Saenz are **DISMISSED** from this action.

6. Reese shall be given an opportunity to answer questions regarding the remaining defendants in a separate Order for More Definite Statement.

7. Reese is **WARNED** that he may be subject to sanctions and dismissal of this action if he fails to comply with the court's orders and instructions.

**SIGNED** this 7th day of November, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE